STRECKFUS STEAMERS, INC., *v.* KIERSKY, ASSESSOR.

(Division A. Nov. 4, 1935. Suggestion of Error Overruled Jan. 6, 1936.)

[163 So. 830. No. 31761.]

**Ben Wilkes,** of Vicksburg, and **Leo J. Sandman,** of Louisville, Ky., for appellant.

Vollor & Teller and R. M. Kelly, of Vicksburg, and Edw. J. Bogen, of Greenville, for appellee.

**Cook, J.,** delivered the opinion of the court.

On the 31st day of December, 1930, the mayor and aldermen of the city of Vicksburg passed an ordinance creating and levying certain privilege license taxes on specific businesses, trades, callings, and professions carried on in the city for the year 1931 and subsequently years, which included a tax of two hundred dollars for each day, or part thereof, upon each excursion boat taking passengers from the said city and returning thereto; and on January 16, 1933, an ordinance in all respects identical with the aforesaid ordinance, insofar as it affected the liability of appellant for privilege license taxes, was enacted and declared to be in force and effect on and after January 1, 1933.

During the year 1931, the appellant was operating steamers on the Mississippi river, which were engaged in the business of carrying on pleasure excursions from the various cities along the river. When it advertised intention of running excursions from the Vicksburg wharf on two separate days, the city of Vicksburg demanded, and the appellant paid, under protest, a privilege tax of two hundred dollars for each of the separate days, and thereafter appellant filed suit to recover the

sum so paid under protest. A judgment in its favor was rendered in the circuit court of Warren county from which there was an appeal to this court, where the judgment of the circuit court was reversed and a judgment was entered in favor of the city of Vicksburg. The opinion on that appeal is reported in City of Vicksburg v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, and reference is made thereto for a statement of the issues there involved and the points decided.

While the above-mentioned suit was pending in the circuit court, the appellant, through its attorneys of record in that suit, entered into negotiations with the city authorities in reference to future excursions, and as a result of such negotiations the following letter was forwarded to the said city:

"Brunini and Hirsch.

"Attorneys at Law

"Vicksburg, Miss., April 16th, 1932

"Hon. J. C. Hamilton, Mayor, City of Vicksburg, Vicksburg, Miss.

"Dear Sir: A suit was instituted by the Streckfus Steamers against the City of Vicksburg for the recovery of the privilege tax of $400.00 paid on May 9th and May 10th, 1931. On the hearing before Judge Thigpen, the issue was decided in favor of the Streckfus Steamers. The City has appealed to the Circuit Court from this adverse ruling.

"It is the intention of the Streckfus Steamers to run an excursion from Vicksburg on Saturday April 16th, and Sunday, April 17th, 1932.

"In the event the suit now pending on appeal is finally decided against the Streckfus Steamers, then the Streckfus Steamers binds and obligates itself to pay to the City of Vicksburg the privilege tax of $200.00 per day for the two days that it proposes to operate; that is, on April 16th and April 17th, 1932, said payment to be

made within thirty days after the present suit is finally decided.

"Yours very truly,

"Streckfus Steamers,

"By Verne Streckfus."

Thereafter, letters of the same import and in substantially the same language were written covering proposed excursions on May 7 and 8, 1932, May 16 and 17, 1932, September 24, 1933, and October 7 and 8, 1933; the last of these letters being as follows:

"Brunini & Hirsch

"Attorneys at Law.

"Vicksburg, Miss. October 7th, 1933.

"Hon. J. C. Hamilton, Mayor, City of Vicksburg, Vicksburg, Miss.

"City of Vicksburg vs. Streckfus Steamers

"Dear Sir: You will recall that an opinion has been rendered by the State Supreme Court upholding the right of the City of Vicksburg to tax the Steamers $200.00 per day. Mr. Hirsch is out of the City today, being in Jackson, and when he left he stated that he would be there the whole of the day.

"While the Supreme Court has rendered its decision still we have fifteen days from its rendition to file a suggestion of error, and in addition to that we have the right to appeal the case to the Supreme Court of the United States. Just what course Mr. Hirsch will adopt the writer does not know, but we would like very much to have the same understanding with you that we had before—this time in reference to the Excursions to be run tonight and tomorrow night. Of course if Mr. Hirsch determines not to file a suggestion of error and not take an appeal to the Supreme Court of the United States that will end the matter, but we would like to have the same arrangement; that is, in reference to the Excursions tonight and tomorrow night that we had before, with the understanding that when the matter is finally con-

cluded; the payment will be made if the final decision is against us.

"Yours very truly,
"Streckfus Steamers,
"By, John N. Streckfus."

Of the four such letters not quoted herein, one was signed "Streckfus Steamers, by Roy M. Streckfus," and three were signed, "Streckfus Steamers, by Joseph Streckfus, Manager."

On each of the several dates named in these letters to the mayor of Vicksburg, the appellant ran pleasure excursions from Vicksburg and returning thereto, and the city made no effort to collect the privilege taxes for any of these operations until after the final conclusion of the above-mentioned suit in this court, when payment of the privilege taxes of two hundred dollars for each day on which excursions had been run, as designated in the aforesaid letters to the mayor, was demanded, and payment of these taxes was refused. The appellant thereupon employed other attorneys, and by a petition in admiralty in the United States District Court it sought to have the said ordinance declared void as to it, and the city of Vicksburg and its official perpetually enjoined from enforcing and collecting the sums alleged to be due and to become due under said ordinance.

Thereafter the appellee, Abe Kiersky, assessor and tax collector of the city of Vicksburg, under authority and directions of the mayor and aldermen, instituted this suit in the circuit court of Washington county by an attachment against the appellant as a nonresident corporation; the declaration filed being in four counts based upon the following separate theories:

(1) That the agreements of appellant which were embodied in the several letters addressed to the mayor of said city covering the tax and occasions in question, which were relied upon and acted on by the city, were valid, effectual, and binding stipulations to abide by the judgment in the former case between the same parties by

payment of said taxes in full, and that since said former or "test" case had been finally determined in favor of appellee, liability was independently and absolutely imposed by virtue of such stipulations.

(2) That the decision of this court, as reported in City of Vicksburg v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, is res judicata as to all questions presented by the present suit and imposes and conclusively fixes appellant's liability for the taxes imposed by the ordinance in question.

(3) That the business pursued by the appellant is of such nature and kind as is covered and contemplated by the ordinances in question, and that under said ordinances by its course of business liability was independently imposed and fixed.

The appellant thereafter filed its bond and petition for removal of the cause to the United States District Court on the ground that it was one of a civil maritime nature over which the District Court of the United States had original and exclusive jurisdiction, and involved questions controlled by the laws of the United States. Appellee filed exceptions to this petition, alleging as grounds thereof, among others, that the cause was not one of a civil maritime nature, or one over which the federal court had original jurisdiction, or which involved any federal constitutional question, or which was predicated upon the laws of the United States. The court below sustained these exceptions and denied the petition for removal.

Thereafter, appellant filed a plea in abatement averring that there was then pending in the United States District Court an action between substantially the same parties in respect to the same facts, and that a determination of the said cause in admiralty would determine the rights of the parties. Appellee demurred to this plea on the ground, among others, that on its face it disclosed that the issues and parties were not substantially the same, and that the pendency of the suit in the United States

Court did not in law serve to abate or delay the action in the state court. This demurrer was sustained.

Thereupon the appellant filed a plea of the general issue and gave notice thereunder that it would offer evidence to establish the following affirmative defenses: (1) That it was authorized and empowered to conduct its vessels in the coasting trade of the United States as a passenger excursion boat, and that it was carrying on said business on a free, navigable stream of the United States, and for that reason the ordinances in question were void as to it; (2) that the action was in effect a libel in admiralty, and therefore within the exclusive jurisdiction of the federal courts in admiralty; (3) that the revenue produced by the operation of appellant's boats was so small, and cost of operation so great, that the tax sought to be imposed by the said ordinances was exorbitant, prohibitive, and destructive of appellant's business to an extent that it amounted to a taking of its property without due process of law; (4) that the ordinance effective January 1, 1931, was not certified by the city clerk and approved by the mayor, as required by section 2642, Code of 1930; (5) that said ordinance, although made immediately effective upon its passage, contained no statement of the reasons of its urgency, as required by section 2642, Code of 1930; (6) that the ordinance dated January 16, 1933, is made effective as of January 1, 1933, and is therefore void as being an ex post facto law; (7) that said ordinance is made effective as of a past date, which is the equal of no date, and it contains no emergency statement, as required by section 2642, Code of 1930; (8) that the letters and agreements, copies of which were attached to the declaration, were executed under duress, and without consideration, and were therefore not binding on the appellant; and (9) that the business of the appellant was not conducted within the corporate limits of the city of Vicksburg, but was conducted on a navigable stream, and was therefore not subject to the tax sought to be collected.

To this notice there were attached certified copies of certificates of inspection and enrollment and license granted to the appellant by the clerk of the United States Custom Service at St. Louis, Missouri, and a certified copy of the ordinance of the city of Vicksburg effective January 1, 1931.

Appellee offered in evidence a certified copy of the proceedings in the former appeal to this court, wherein the opinion of the court is reported in City of Vicksburg v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, and also the testimony of the mayor of Vicksburg, for the purpose of establishing the agreement had by the city with the attorneys and representatives of appellant to abide by the final result of said former cause as fixing the liability of appellant for the tax on all future excursions. Upon identification by the mayor, the several letters which were attached to the declaration and which contained the purported agreements between the parties were, over the objection of appellant, offered in evidence. Through the mayor, appellee also offered evidence as to the number and kind of the several excursions conducted by appellant from and returning to Vicksburg wharf after the execution of the said purported agreements.

Upon identification by the city clerk, appellee offered in evidence the minutes of the mayor and aldermen showing the method of adoption of the ordinance of January 1, 1931, and the ordinance itself as spread at large on such minutes, and also a certified copy of the ordinance. There was also introduced the city ordinance book in which there was enrolled an exact duplicate of said ordinance as the same appears on the minutes of the mayor and aldermen, but neither of these copies of the ordinance showed on its face that it had been approved by the mayor and certified by the clerk. The ordinance of January 16, 1933, which was attempted to be made effective as of January 1, 1933, as the same appeared at large on the minute book, was also offered in evidence as was also the city ordinance book containing the said

ordinance. This ordinance as it appears in the ordinance book is signed by the city clerk and approved by the mayor. The city clerk testified that the original of the ordinance first above referred to was filed as a part of the Supreme Court record in the former appeal, but was lost, and, over the objection of appellant, she testified that it was signed by the clerk and approved by the mayor. The appellant offered no evidence whatever.

The first assignment of error presented by counsel for appellant is that the court erred in denying its petition to remove the cause to the federal court; the contention being that the cause was removable on the face of the record, including the petition for removal, which averred that there was involved a matter over which the United States District Courts have original and exclusive jurisdiction, that is, a civil cause in admiralty involving a constitutional right and question. It is well settled that upon the filing of the petition for removal, supported by the necessary security, there is presented to the state court a question of law; that is, whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and all the pleadings prior thereto, that the petitioner was entitled to remove the suit, and that question the state court has a right to decide for itself. Burlington, C. R. & N. R. Co. v. Dunn, 122 U. S. 513, 7 S. Ct. 1262, 30 L. Ed. 1159; Crehore v. Ohio & M. R. Co., 131 U. S. 240, 9 S. Ct. 692, 33 L. Ed. 144; Hercules Powder Co. v. Nix, 144 Miss. 113, 109 So. 862; 54 C. J. 331-333. In 23 R. C. L. 774, this rule is announced in the following language: The filing of a petition and bond presents to the state court a pure question of law, and that is whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record that the petitioner is entitled to a removal of the suit. If, upon the face of the record, including the petition for removal, a suit does not appear to be removable, then the state court is not bound to surrender its jurisdiction, and may

proceed as if no application for removal had been made. That question the state court has the right to decide for itself. If it errs in keeping the case, and the highest court of the state in which a decision can be had affirms the ruling, the federal supreme court has jurisdiction to correct the error, considering, for that purpose, only the part of the record which ends with the petition for removal."

Section 41 (3), title 28, U. S. C. A., provides, among other things, that the United States District Courts shall have original jurisdiction "of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." In the case at bar, appellee's cause of action is based solely upon the laws of this state, and no right whatever is asserted under the Constitution and laws of the United States. The declaration states a pure common-law action wherein the amount in controversy is less than three thousand dollars. This common-law action is not one cognizable in admiralty, but if the action should be construed as maritime in its nature, still the remedy at common law was adequate, and under said section 41 (3), title 28 U. S. C. A., the appellee had the right to elect "whether to ask relief in a state court or in the district court; and the defendant may not object to the proceeding in the state court on the ground that the cause of action is in its nature maritime, so long as the action is in personam." 1 R. C. L. 408. We conclude, therefore, that the court committed no error in declining to remove the cause to the federal court.

Appellant next contends that the court erred in sustaining the demurrer to its plea in abatement. If it be conceded that the parties to the suit pending in the federal court and in the case at bar were the same, it is clear that the issues and relief sought were not the same, and that appellee's remedy, if any, in the federal court was not as effective as that afforded by the suit in the state court, and for that reason the demurrer was proper-

ly sustained. Carbolineum Wood Preserving & Manufacturing Co. v. Meyer, 76 Miss. 586, 25 So. 297, 298. Furthermore, the great weight of authority is to the effect that the pendency of an action in a federal court is not ground for abatement of a like suit in a state court. This rule is stated in 1 C. J. 87, 88, in the following language: ''It is now well settled as a general rule that the pendency of a prior suit in a state court is not ground for abatement of a subsequent suit in a federal court, although the prior suit is between the same parties and for the same cause; nor is the pendency of a suit in a federal court ground for abatement of a like suit in a state court. And this rule applies, according to the weight of authority, even though the courts are in the same state and the state court is within the district covered by the jurisdiction of the federal court, since the two courts, although they may not be foreign to each other, belong to different jurisdictions in such sense that the doctrine of the pendency of a prior suit as ground for abatement is not applicable. It is clear of course that the pendency of an action in a federal or state court is no ground for abatement of a prior suit in the other.''

Appellant next contends that the court below erred in admitting in evidence the transcript of the record of the former appeal, hereinbefore referred to. This record was offered in support of the second count of the declaration, which was based upon the theory that the decision in that case, as reported in City of Vicksburg v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, was res judicata of all issues and questions presented in the case at bar, and conclusively fixed appellant's liability for the taxes sued for. For the purpose for which it was offered this record was competent, and while some parts thereof may be of no probative value, in view of the issues presented in the case now before us, the appellant was not prejudiced thereby, since we do not rest this decision upon the doctrine of res judicata upon all issues raised by the pleadings in this cause. The former decision is clearly

decisive of any question raised, or that might be raised, as to the validity of the ordinances in question, with specific reference to the power to enact such ordinances reposed in the city of Vicksburg under its special charter; as to the reasonableness of the classification for purposes of taxation, and as to whether or not in conducting these excursions the appellant was engaged in interstate commerce; and no issue upon these points seems to be presented by the pleadings.

Appellant next contends that the ordinances under which the taxes were sought to be enrolled were void, and particularly void as to appellant, for the reason that its boats were duly licensed and enrolled to operate passenger excursions on the navigable streams of the United States, and particularly the Mississippi river. Appellant's argument on this point seems to proceed upon the theory that the navigation of the public waters of the United States is subject to the regulation of Congress, and that a license granted under the laws and by the authority of the United States to a boat to carry on coasting trade entitles it to navigate all such waters without restraint by state law, although not engaged in interstate commerce in its ordinary conception; or, in other words, that "navigation is commerce and the business of navigation is commerce as used in the Constitution according to the interpretation of the United States Supreme Court," and since "commerce includes navigation it is not necessary for the vessel to be engaged in interstate transportation to come within the commerce clause of the Constitution."

It is true that in construing the commerce clause of the Constitution (art. 1, sec. 8, clause 3) the Supreme Court of the United States has held that the power to regulate commerce includes navigation as well as traffic in its ordinary signification, and that a license granted under the laws and by the authority of the United States to a vessel to carry on the coasting trade entitles such vessel to navigate the public waters of the United States

without interference by state law. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23. But the appellant is not in a position to avail of the doctrine announced in these and other decisions of the Supreme Court of the United States to the same effect. Section 251, title 46, U. S. C. A., defines what vessels shall be considered vessels of the United States in the following language: "Vessels of twenty tons and upward, enrolled in pursuance of this chapter, and having a license in force, or vessels of less than twenty tons, which, although not enrolled, have a license in force, as required by this chapter, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries."

In Conway v. Taylor, 1 Black (66 U. S.) 603, 17 L. Ed. 191, it was said, in effect, that the enrollment of a vessel ascertained her ownership and gave her national character, while her license gave her authority to carry on the coasting trade; and together they entitled the owner to raise questions under the laws of the United States and particularly the commerce clause of the Constitution. There is no proof whatever that the appellant's boats were enrolled or licensed to engage in the coasting trade. In a notice under its plea of the general issue appellant set up that it would offer proof to show that it was authorized and empowered to conduct its vessels in the coasting trade of the United States as passenger excursion boats, and with this notice, as exhibit thereto, it filed purported certificates of inspection and certified copies of consolidated certificates of enrollment and license for the vessels in question, but these purported certificates and licenses were not introduced in evidence. The appellant offered no evidence whatever, and upon the record before us the appellant is in the same situation as one operating vessels which were neither enrolled nor licensed, and therefore is not entitled to raise any question as to interference with the power of Congress over navigation.

Appellant next contends that the ordinances under which liability was sought to be established are void for various defects and omissions in the enactment thereof; the first objection to the ordinance of December 31, 1930, being that the record fails to show that it was approved by the mayor of the city. In support of this objection appellant cites the original section 10 of the special charter under which the city of Vicksburg operates, which provides, in part, as follows: "Each ordinance shall be submitted by the City Clerk to the Mayor for his approval or disapproval, on the day following its adoption by the Aldermen, and the Mayor, if he shall approve the same, shall sign it approved by him, and the ordinance shall become a law as it may provide. If he disapprove the ordinance he shall, within three days after the Clerk shall have delivered it to him, return the same to the Clerk, with his disapproval and reasons therefor, in writing, addressed to the Board of Mayor and Aldermen. If the Mayor shall fail to return the ordinance to the Clerk within the time aforesaid, with his action thereon, in writing, the ordinance shall become a law according to its provisions, without the action of the mayor. The Clerk shall endorse on each ordinance the date of delivery to the Mayor, and also the time of its return to him by the Mayor, and shall lay before the Board of Mayor and Aldermen at their next meeting any vetoed ordinance, with the accompanying communication from the Mayor."

As shown by the records on file in the office of the secretary of state, by an amendment approved by the governor on August 14, 1912, section 10 of the original charter of said city was changed to read as follows:

"There shall be a Mayor and two Aldermen, each of whom shall be elected from the City at large by the qualified voters thereof, and shall serve four years and until the election and qualification of their successors.

"The said Mayor and Aldermen shall respectively exercise and perform all the powers and duties belonging to and exercised and performed by the Mayor and Alder-

men at the date of the adoption of this amendment, except as hereinafter expressly limited. The Mayor shall have no veto power, and shall be entitled to vote on all questions in the same manner, and with the same effect as the Aldermen. No appropriation of public funds shall be made to any private use or advantage as distinguished from the interest of the corporation, except by unanimous vote of the Mayor and Aldermen and not in any event for more than Two Hundred and Fifty ($250.00) dollars for any one purpose.

"Two Aldermen, or the Mayor and one Alderman, shall constitute a quorum for the transaction of business at any meeting of the Board of Mayor and Aldermen, and any ordinance, resolution or corporate power whatsoever which the said Board of Mayor and Aldermen shall have the power to enact, adopt or exercise, may be enacted, adopted or exercised by the vote of two Aldermen or of the Mayor and one Alderman, regardless of any provision in the said Charter requiring the vote of any specified number of Aldermen, except as to appropriations for non-corporate purposes as hereinbefore provided. The Mayor, or any Aldermen, shall have the right at any time, to call a special meeting of the Board of Mayor and Aldermen."

It will be noted that by the above-quoted amendment of section 10 of the charter of the city of Vicksburg, the mayor is divested of all veto power, and the board of mayor and aldermen are empowered to adopt ordinances by the vote of two aldermen, or of the mayor and one alderman. There is no requirement that any ordinance shall be approved by the mayor before it shall become effective, and since the charter of the city of Vicksburg makes specific provision for the adoption of ordinances without the formal approval of the mayor, section 2642, Code of 1930, providing for the adoption of ordinances by municipalities operating under the common statutory charter for municipalities, chapter 50, Code of 1930, is not applicable. Consequently, formal approval by the

mayor of the ordinance, or the ordinance dated January 16, 1933, was unnecessary. There was offered in evidence certified copies of these ordinances, and also the city ordinance book in which they were entered, which by virtue of section 2547, Code of 1930, was prima facie evidence of the existence of the ordinances and that the same were adopted as provided by law. Therefore, it appears that the ordinances were sufficiently proved, and that they were a valid exercise of power conferred by the charter of the city, and were legally adopted.

The ordinance dated December 31, 1930, was made effective on January 1, 1931, while the ordinance of January 16, 1933, provided that it should be effective as of January 1, 1933, and it is argued that the latter ordinance is void for the reason that it is an attempt to enact an ex post facto law. Section 2542, Code of 1930, provides that ordinances shall not be enforced, unless for cause the contrary be ordered, for one month after their passage. The only effect of the failure of the ordinance of December 31, 1930, to assign cause for the immediate enforcement thereof was to cause it to become effective and enforceable not earlier than one month after its passage. Of course, the mayor and aldermen had no power to make the ordinance of January 16, 1933, effective prior to the date of its passage, but the attempt to do so did not render the ordinance void after its passage by proper vote and act of the mayor and aldermen; it was merely ineffective and unenforceable until the lapse of one month after its passage, and since the appellant incurred no liability thereunder, and no attempt was made to enforce it for any operations of appellant carried on prior to the time the ordinance became effective, one month after its passage, the appellant cannot complain of the abortive effort to make it effective at an earlier date.

It is next argued that the tax imposed was so exorbitant as to be prohibitive and destructive of appellant's business. All taxes are presumed to be reasonable

unless proved to be unreasonable, and in its notice of affirmative defenses to be proved, the appellant set up the unreasonableness of the ordinances, but offered no evidence whatever to substantiate the averment, and consequently that question is not here presented by the evidence.

As said by counsel for the appellant near the conclusion of their brief, the record "boils itself down to the question of whether or not the two ordinances upon which this suit is predicated are valid ordinances." We think these ordinances are valid, and in reaching the conclusion that, on this record, appellant is liable for the taxes sued for, we have proceeded without consideration of the agreements embodied in the several letters signed with the name of the appellant corporation and addressed to the mayor of the city, and therefore, if there were errors in the admission of these letters, as to which we express no opinion, such errors were harmless. The judgment of the court below is affirmed.

Affirmed.